UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 2:18-CR-112 |
| vs. | ) | |
| MARIA LUISA MARISCAL, | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Defendant, Maria Luisa Mariscal ("Mariscal"), has filed a Motion to Suppress and Supporting Memorandum [Doc. 30]. Defendant also filed a Supplement to the Motion to Suppress [Doc. 36]. The United States filed a Response in Opposition [Doc. 37] and Defendant filed a Reply [Doc. 38]. This matter is before the Court pursuant to 28 U.S.C. 636(b) and the standing orders of the District Court for a Report and Recommendation.

On Friday, March 1, 2019, the Court conducted an evidentiary hearing on Defendant's motion. Present at the hearing were Defendant, her counsel, Tim Moore, Esq., and Assistant United States Attorney Meghan Gomez, Esq. Testifying at the hearing was Texas State Trooper Max Honesto. This matter is now ripe for resolution. For the reasons stated herein, the undersigned RECOMMENDS the Motion to Suppress be DENIED.

**I.   Procedural Background**

On April 6, 2018, a complaint was filed against Mariscal, charging her with conspiracy to distribute and possession with the intent to distribute fifty (50) grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A) [Doc. 3]. On August 20, 2018, a federal grand jury returned an indictment against Mariscal charging her with the same offense. On

1

November 21, 2018, Mariscal filed a Motion to Suppress [Doc. 30] arguing that the traffic stop conducted by law enforcement violated the Fourth Amendment in that the stop was prolonged "beyond the amount of time reasonably required to complete the stop's mission." *Id*. at 2. On February 8, 2019, Mariscal filed a Supplement to Motion to Suppress [Doc. 36] that further asserted violations of her Fourth Amendment rights, arguing that her consent was not voluntary. The United States responds [Doc. 37] that while the traffic stop was extended beyond the time it took to issue the warning citations, the extension was supported by reasonable suspicion. It also argues that consent was voluntarily given to search the vehicle.

## II.     Findings of Fact

On Wednesday, April 4, 2018 in Carson County, Texas, Trooper Max Honesto, a member of the Texas Department of Public Safety working as an interdiction officer, was stationed on the eastbound shoulder of Interstate 40. Trooper Honesto observed a vehicle make a lane change without signaling, a violation of Texas Transportation Code. At that time, Trooper Honesto effected a traffic stop on the vehicle. As he did so, he also noticed that the vehicle had an inoperable brake light. As Trooper Honesto approached the vehicle, he noted that both the driver- and passenger-side windows had been rolled down. In his experience, sometimes people transporting narcotics will roll the windows down in order to air out the car.

Trooper Honesto approached the vehicle on the passenger side and informed the occupants of the reasons he pulled them over, notably the failure to signal and the inoperable tail light. Mariscal was the passenger in the vehicle, and her son was driving. He requested both occupants' driver's licenses, the vehicle's registration, and the owner's proof of insurance. Trooper Honesto then asked the driver to step out of the vehicle and meet him at the patrol car so that he could type out the warning citations. While Mariscal handed Trooper Honesto the registration and proof of

2

insurance, Mariscal clarified that she recently purchased the car from her boyfriend and that the insurance was in his name. Trooper Honesto then inquired about where they were traveling to, and Mariscal replied that they were headed to Tennessee and planned to spend two days to visit her sick aunt. Mariscal initially stated that her aunt's name was Mari, but when the trooper asked her again, she stated that her name was "Yolanda, Yoli." She also stated that they could only stay two days because her son had to return to work and that they would be staying with her family while they were there. She also stated that her son was aware of their travel plans.

Trooper Honesto then returned to the patrol car, suggesting to the son to sit in the front passenger seat, as it was windy outside. As he wrote the warning citations, Trooper Honesto attempted to confirm their travel plans with the son. The son stated that they were traveling to Tennessee to visit a sick aunt, whom he had met "a long time ago." He stated that he was "just helping [his mother, Mariscal] drive." He was not sure how long they intended to stay in Tennessee but said that they were going to possibly stay in a hotel. When Trooper Honesto asked the son what the aunt's name was, he stated Maria Mariscal. He further stated that he was not sure where they were going in Tennessee and that he had never left California before. He also told Trooper Honesto that they had been sleeping at the rest stops as they were trying to get to Tennessee quickly. The son believed his aunt was at a hospital but was unsure of which one. He stated that he had been sleeping most of the trip and had only recently switched out with his mother, referencing her recent surgery. He confirmed that his mother had not owned this car for very long. He believed that possibly one of his mother's sisters in Tennessee was named "Yolanda" but was unsure because she has several sisters and step-sisters that live in Tennessee. Trooper Honesto finished writing the warning citations, gave the paperwork to the son, and asked if he could speak to his mother, Mariscal, further, telling the son to ask if she would come back to the patrol car.

3

Mariscal joined Trooper Honesto in the patrol car. He told her that after talking to her the first time and then talking to her son, he had a few things that he wanted to clarify about their trip. After stating again that he had not written them a ticket, only a warning, Trooper Honesto asked Mariscal of the name of her aunt again. She again stated that it was "Yolanda." When Trooper Honesto asked where Yolanda was staying, Mariscal stated that she was not in a hospital, but she was at home. She also stated that she and her son have two pieces of luggage for the trip, offering to let Trooper Honesto see them if he wanted. When Trooper Honesto asked about when they had to be back in California, Mariscal stated that they have to be back on Sunday in order for her son to train for a job. She also mentioned that she has a CT scan of her stomach on Monday.

When Trooper Honesto told Mariscal that her son gave a different name for the person they were going to visit and stated that they would stay in a hotel, Mariscal stated that they are looking for a hotel to sleep in right now since they were tired from only having slept one or two hours at gas stations so far on the trip. Trooper Honesto then admitted to Mariscal that he was skeptical of her story, that her story sounded strange. In response, Mariscal told him "I do security, I do my job, I do legal rights." She also stated that she had a bad experience getting pulled over in Tijuana, Mexico. Trooper Honesto clarified that she believed that he was treating her well, to which she agreed. Trooper Honesto noted the things that were concerning him, including that their story was not the same and that they were traveling cross country for only a short stay.

Trooper Honesto then asked if there was anything illegal inside the car. Mariscal responded "No, senor, puede checarclo." (No, sir, you can check it). After confirming that the car was hers and had always been in her possession since she bought it, Trooper Honesto asked if he could search the car.

4

| | | | |
|---|---|---|---|
| MARISCAL: | Puedo abrir... | MARISCAL: | I can open it... |
| | [VOCES ENTRECRUZADAS] | | [VOICES OVERLAP] |
| TROOPER: | [TOSE] | TROOPER: | [COUGHS] |
| MARISCAL: | ...si quiere checarlo. *I mean, I have my stuff, I have my clothes,* [U/I] | MARISCAL: | ...if you want to check it out. I mean, I have my stuff, I have my clothes, [U/I] |
| | [VOCES ENTRECRUZADAS] | | [VOICES OVERLAP] |
| TROOPER: | *So... so, this is... this is my question to you, all right?* | TROOPER: | So... so, this is... this is my question to you, all right? |
| MARISCAL: | Dígame. | MARISCAL: | Go ahead. |
| TROOPER: | *Since you're the owner of the car, you know what I mean? I could've asked him, but I'm asking you since you're the owner of the car, can I search your car, everything, from the front to the back, from the bottom to the top?* | TROOPER: | Since you're the owner of the car, you know what I mean? I could've asked him, but I'm asking you since you're the owner of the car, can I search your car, everything, from the front to the back, from the bottom to the top? |
| MARISCAL: | Puede. Pero la pregunta es que le digo, ¿me paró por un [I/I]? Pero puede con toda confianza. | MARISCAL: | You can. But what I'm saying is am I being pulled over for a [U/I]? But yeah you can go ahead. |
| TROOPER: | OK. | TROOPER: | OK. |
| MARISCAL: | Pero mi pregunta es, este, de que me está diciendo usted que fue por un [I/I] *ticket, and right now I'm feeling like you have a order of... I mean, it's fine. I don't know if it's because it's... my plates are from California...* | MARISCAL: | But my question is, um, you're telling me it was because of a [U/I] ticket, and right now I'm feeling like you have a order of... I mean, it's fine. I don't know if it's because it's... my plates are from California... |

(Exhibit 2, Translation of Transcription, p. 22). After Mariscal questioned that the stop resulted from her California license plate, Trooper Honesto explained that he initiated the stop for the traffic violations of failure to signal when changing a lane and the broken tail light and continued the stop based on the inconsistencies in their travel plans. He also noted his experience as an interdiction officer, encountering those who know a lot of details, but the stories do not make sense. He explained that this is what made him think that this was more than a basic traffic stop.

5

Trooper Honesto again asks Mariscal for consent to search the vehicle.

| TROOPER: | *So, la... la... lo que le pregunté a usted si usted me da permiso a revisar todo el carro.* | TROOPER: | So, my... my... my question still stands, if you'll give me permission to search the whole car. |
|---|---|---|---|
| MARISCAL: | *Como guste.* | MARISCAL: | Go ahead. |
| TROOPER: | *So, that's a yes?* | TROOPER: | So, that's a yes? |
| MARISCAL: | *Sí, pues, si gusta.* | MARISCAL: | Yeah, um, if you want. |
| TROOPER: | *Well, that's what I want to do. Yo ne... necesi...* | TROOPER: | Well, that's what I want to do. I need... need... |
| | [VOCES ENTRECRUZADAS] | | [VOICES OVERLAP] |
| MARISCAL: | *Si le digo que no, de todos modos me va a detener más aquí...* | MARISCAL: | If I tell you no, either way you're going to hold me up... |
| | [VOCES ENTRECRUZADAS] | | [VOICES OVERLAP] |
| TROOPER: | [ACLARA LA VOZ] | TROOPER: | [CLEARS THROAT] |
| MARISCAL: | *...y me va a entretener, y yo lo... yo quiero llegar a descansar, la verdad. Y como le digo, yo traigo...* | MARISCAL: | ...and you're going to keep me waiting, and I... I just want to get some rest, seriously. And like I said, I have... |
| TROOPER: | *So, María, what I need is, uh, yes or no.* | TROOPER: | So, María, what I need is, uh, yes or no. |
| MARISCAL: | *Por eso le digo, podría revisarlo.* | MARISCAL: | That's what I said, you can go ahead. |

(Exhibit 2, Translation of Transcription, p. 23-24). Trooper Honesto then went to search the vehicle. After investigating the passenger side door, Trooper Honesto requested Mariscal and her son to put their hands behind their back, and he placed them in handcuffs. After fully searching the vehicle, officers found twenty-seven (27) pounds of methamphetamine in vacuum-sealed bags in the door panels of the vehicle.

6

### III.     Analysis

In her motion to suppress and the subsequently filed supplement, Defendant argues that Trooper Honesto detained her longer than was necessary to complete the traffic stop without reasonable suspicion. She also argues that the consent she gave was illegal and invalid [Doc. 36, pg. 2], as her consent was not "unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." *United States v. McCaleb*, 552, F.2d 717, 721 (6th 1977). In response, the United States argues that, acknowledging that the traffic stop was extended after Trooper Honesto had given the son the citations, the officer did have reasonable suspicion to continue speaking to Defendant and as a result, obtained her valid consent to search the vehicle. As such, the Court will first address whether Trooper Honesto had reasonable suspicion to extend the traffic stop beyond the point of issuing the citation. Next, if appropriate, the Court will address Defendant's consent to search her vehicle.

### A.     Reasonable Suspicion

The Supreme Court in *Illinois v. Caballes* held that "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." 543 U.S. 405, 407 (2005). "Once the purpose of the initial traffic stop is completed, an officer cannot further detain the vehicle or its occupants unless something happened *during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *United States v. Davis*, 430 F.3d 345, 353 (6th 2005) (quoting *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999)) (emphasis in original) (internal quotations omitted). In order to gauge whether the officer had reasonable suspicion, the Court must examine "the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). This

7

inquiry encompasses the totality of the circumstances, *United States v. Stepp*, 680 F.3d 651, 664 (6th Cir. 2012), including considering that the officers "may draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them…." *United States v. Calvetti*, 836 F.3d 654, 666 (6th Cir. 2016) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotations omitted).

In this case, Trooper Honesto learned the following information prior to completing the mission of the traffic stop. Defendant was driving across the country, from California to Tennessee. She and her son were only planning on staying two or three days before starting the drive back to California. Defendant had recently purchased the vehicle from her ex-boyfriend. Trooper Honesto testified that making sure that the car is registered to the driver is a way that those transporting contraband try to avoid drawing any further suspicion if they get pulled over. This suspicion was amplified by the car being insured by a third-party, not in the name of Defendant. The son also did not know where specifically in Tennessee that they were going. He also stated that they have been sleeping at rest stops to try to get to Tennessee quickly. Trooper Honesto stated that he has had experience with those transporting contraband sleeping in their car to avoid leaving the product alone and unguarded.

Further, Trooper Honesto noted that Defendant and her son provided different details in their travel plans. Defendant said her sick aunt's name was "Mari" and then "Yolanda or Yoli," while her son stated that he believed her name to be "Maria Mariscal." Defendant stated that they had to be back to California by Monday for her son to go to work, but her son said that he had recently quit his job and that he believed that she had a reason to be back by Monday. Defendant stated that they would be staying with her family when they arrived, but her son stated he believed that they were staying in a hotel. The Sixth Circuit has found that a court may "place[] weight on

8

implausible travel plans in considering whether reasonable suspicion has arisen." *United States v. Stepp*, 680 F.3d 651, 666 (6th Cir. 2012). Courts have also considered "inconsistent stories regarding [defendant's] travel itinerary" as a factor in analyzing an officer's reasonable suspicion. *United States v. Hill*, 195 F.3d 258, 272 (6th Cir. 1999); *see also United States v. Winters*, 782 F.3d 289, 299-300 (6th Cir. 2015) (finding that the inconsistent answers given by the defendant and the driver of the car as to the duration of their stay in Memphis and of the driver's return to Atlanta were given weight in determining whether reasonable suspicion had arisen); *United States v. Walton*, 258 F.App'x 753, 758 (6th Cir. 2007) (noting defendant and his passenger's conflicting explanations of their travel plans as a factor).

In this case, Defendant's travel plans were both implausible as well as inconsistent with the answers given by her son. At the point where Trooper Honesto completes the mission of the traffic stop, that is, gives the son the warning citations and returns their licenses, the totality of the circumstances gave him sufficient reasonable suspicion to extend the stop to speak to Defendant again to clarify details of her travel plans. The details of the stop prior to the issuance of the citations, including the length of the drive compared to the length of the stay, the recent registration and insurance under a third party, and the various inconsistencies in the stories between the mother and son, reasonably led Trooper Honesto to want to speak with Defendant again to address some of those issues. Therefore, the Court finds that while the traffic stop was extended beyond the time necessary to issue a warning citation, the officer did have reasonable suspicion to extend the duration of the stop to again speak with Defendant.

**B.     Consent**

As the extension of the traffic stop was supported by reasonable suspicion, the Court will now address the consent obtained to search the vehicle. While the Fourth Amendment requires a

9

warrant and probable cause to initiate a search, "a search conducted pursuant to voluntary and valid consent" is "one of the most common…exceptions" to that requirement. *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). The consent must be "unequivocally, specifically and intelligently given, uncontaminated by any duress and coercion." *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992). The Court can take into account the totality of the circumstances, including "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *Worley*, 193 F.3d at 386 (quoting *United States v. Riascos-Suarez*, 73 F.3d 616, 625 (6th Cir. 1996)).

Throughout his conversation with Defendant, Trooper Honesto checked that Defendant understood him and was comfortable speaking with him, both in response to Defendant's statement about her learning disability and her experience being pulled over in Mexico. *See* Exhibit 1, Timestamp 16:32, 21:21. While Defendant did note that she had to have her driver's test read to her, she did not make any indication that she did not understand what was happening at the time she gave her consent. Defendant and Trooper Honesto conversed in both Spanish and English, both switching fluently between the two languages. Defendant also noted that she works "in security and legal rights," suggesting that she had at least some familiarity with the legal system. *See* Exhibit 1, Timestamp 20:14.

Trooper Honesto asked Defendant if there was anything illegal inside the vehicle. Exhibit 1, Timestamp 22:04. Defendant responded "No, senor, puede checarlo." (No, sir, you can check it.) Exhibit 1, Timestamp 22:08. It was Defendant who suggested the officer check the vehicle. Defendant next told the officer he could look in her luggage. Exhibit 1, Timestamp 22:55. Trooper

10

Honesto clarified that he wanted to look in the whole car, "everything, from the front to the back, from the bottom to the top." Exhibit 1, Timestamp 23:07. Defendant responded "Puede." (You can.) Exhibit 1, Timestamp 23:12. After reiterating that he was skeptical of the competing, inconsistent stories from her and her son, Trooper Honesto again asked for consent from Defendant to search her car. Defendant again said "Como guste." (Go ahead.) *See* Exhibit 1, Timestamp 24:17-24:29. Defendant then stated that he was just going to keep her waiting. In response and to clarify that she consented to a search, Trooper Honesto stated that he needed a "yes or a no" to search her vehicle. *See* Exhibit 1, Timestamp 24:38. Defendant responded "Por eso le digo, podria revisarlo." (That's what I said, you can go ahead.) Exhibit 1, Timestamp 24:41.

At the point where Trooper Honesto finally begins to search Defendant's vehicle, Defendant had stated her consent to search four times. Even when presented with an option to deny consent, as Trooper Honesto's statement that he needed a yes *or a no* answer would suggest, Defendant gave her consent. Therefore, the Court concludes that Defendant gave her consent to search the vehicle and such was "unequivocally, specifically and intelligently given, uncontaminated by any duress and coercion." *United States v. Tillman*, 963 F.2d 137, 143 (6th Cir. 1992).

### IV. Conclusion

Because the undersigned finds that there was reasonable suspicion to extend the traffic stop and that Defendant's consent to search the vehicle was voluntary, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 30] and Supplement [Doc. 31] be **DENIED** for the reasons outlined herein.[1]

---

[1] Any objections to this report and recommendation must be served and filed by **March 20, 2019**. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582

Respectfully Submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

(6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).